MABEL ESTELLE WATTS (now BOGERT) *vs.* HORACE WELLINGTON WATTS.

Suffolk.    May 4, 5, 1943. — June 1, 1943.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Marriage and Divorce*, Alimony, Modification of decree.

Under G. L. (Ter. Ed.) c. 208, § 37, a court granting a divorce with a decree for alimony may subsequently revoke or modify such decree with respect to instalments of alimony already in arrears as well as to future instalments.

Upon a petition by the libellee in a divorce case to revoke or modify a decree, entered many years before, for alimony payable periodically, none of which he had paid, facts established as to the remarriage of the libellant, ample support furnished her by her second husband, property left her by him at his death, other property owned by her, and the remarriage, dependents and means of the libellee, required a decree vacating the decree for alimony as of the date of its entry.

LIBEL FOR DIVORCE, filed in the Superior Court on October 1, 1917.

Proceedings respecting a petition by the libellee, filed on July 26, 1941, for revocation or modification of a decree for alimony are described in the opinion. The report of the case was by *Dowd*, J.

*R. B. Heavens*, for the libellee.

*J. W. Worthen*, for the libellant.

DOLAN, J. ·This is a petition brought in the Superior Court under the provisions of G. L. (Ter. Ed.) c. 208, § 37, praying for the modification or vacation of a decree for alimony, entered January 29, 1918, in connection with a decree nisi of divorce, dated the same day, which became absolute in due course. G. L. (Ter. Ed.) c. 208, § 21. The libellee in that case is the petitioner in the present case, and the libellant in the original divorce proceeding is the respondent in this case. They will be referred to hereinafter as petitioner and respondent, respectively.

The present case was here before, upon the appeal of the petitioner from an order for decree made by the judge and from what purported to be a final decree, and upon the exception of the respondent to the denial by the judge of her motion that the petitioner's appeal be dismissed, and it was decided that, as matter of law, the petitioner's appeal did not lie, and that the respondent's motion should have been granted. *Watts* v. *Watts*, 312 Mass. 442. It appeared, however, when the case was here before, that the purported final decree entered by the judge had in fact been entered before the expiration of the time fixed for taking exceptions to the order for judgment under Rule 72 of the Superior Court (1932), and was improperly entered, and this court, while sustaining the respondent's exception to the denial of her motion to dismiss the appeal, and directing that, instead, a decree be entered allowing that motion, pointed out that the purported final decree, having been entered prematurely and improperly, must be treated ˙ as merely an order for decree, and that therefore it was still within the power of the judge to report the questions of law actually raised for the determination of this court (page 451).

The case now comes before us upon the report of the judge, in which he sets forth the findings and rulings made

by him that are recited in *Watts* v. *Watts*, 312 Mass. 442, 443, 444; and further states that if his ruling that the Superior Court has "no power to revoke or modify the decree of January 29, 1918, as to arrears of alimony already due and payable to the libellant" was incorrect and "it is determined by the Supreme Judicial Court that this [the Superior] Court has the power to vacate, revise or modify the decree of January 29, 1918 [as to arrears], then it is provided that a decree shall be entered vacating said decree in so far as it relates to alimony," and that, if "the ruling . . . is correct, it is provided that a decree be entered for the libellant in the sum of all arrearages of alimony with interest." Neither of these provisos appears to have been based upon any stipulation of the parties. This being so, we must deal with the case upon the facts reported and the order made by the judge for final decree absolving the petitioner from making any future payments for alimony, but denying his petition in all other respects, that is, as to arrears past due.

It is appropriate, we think, to narrate here the findings and rulings of the judge incorporated in his report, although they were set forth in the opinion of this court when the case was here before. They follow: The decree for alimony entered on January 29, 1918, ordered the libellee, the petitioner here, to pay to the libellant, the respondent here, $162.50 a month in weekly instalments of $40.62, the first payment to be made on Friday, February 1, 1918. The decree nisi became absolute on "July 29, 1918," and in September of 1918 the respondent married one Bogert, a resident of the State of New York, and lived with him in that State until his death on July 10, 1939. He was a man of substantial means and earning capacity, averaging from 1920 to the time of his death $11,250 a year. He left an estate of at least $75,000. He "left to the . . . [respondent] the proceeds of an insurance policy in the amount of $10,500 and a bequest under his will in trust a fund of $25,000." The respondent has other property. The respondent was properly and sufficiently supported by Bogert; "she did not need nor require support from the" petitioner, and at no

time did she endeavor or attempt to enforce the decree for alimony until June 5, 1941, when demand was made "for payment of the arrears under said decree." At no time has the petitioner made any of the payments required by said decree. Since the entry of the decree the petitioner has remarried, has a wife and two children dependent upon him for support, and has contributed to the support of his mother. His "income for the past year amounts to $10,000." Under the provisions of Bogert's will, in addition to the income payable from the trust fund of $25,000, the trustees are empowered in their discretion to pay to the respondent from the principal such sums as she may need. The trustees have refused to make payments to her from principal, because of representations made to them and to the courts of New York that a large sum of alimony in arrears was due the respondent under the decree in question. The judge ruled that "this court has no power to revoke or modify the decree . . . as to arrears of alimony already due and payable to the libellant," reciting that he made "this ruling without prejudice to the rights of either party hereto, on scire facias petition or other legal process brought to enforce said decree," and "As to future alimony, it is ordered, adjudged and decreed that the decree of January 29, 1918, be and hereby is modified to the extent that the libellee shall not be required to make any further payments of future alimony after the entry of this decree." We think that it is obvious that, in ruling as before set forth and in effect denying relief to the petitioner as to arrears and saving his rights in any scire facias or other "legal process" brought to enforce the decree, the judge was influenced in reaching his decision by the instruction that he gave himself which, as matter of law, was erroneous. The contention of the respondent that, as ruled by the judge, he had no power in the instant case to revoke or modify the decree for alimony as to arrears thereunder cannot be sustained.

We are not here concerned with any question of enforcing decrees for support or alimony entered in courts of foreign jurisdiction, the effect of which would be governed by the law of the jurisdiction where entered, but rather

are concerned with the powers of the courts of this Commonwealth in proceedings under G. L. (Ter. Ed.) c. 208, § 37, for the modification of decrees entered therein for the payment of alimony in divorce proceedings. Those powers are exclusively governed by our laws and not by those of any jurisdiction beyond our borders. No question of full faith and credit under the Federal Constitution is involved in the interpretation by us of the laws in question governing the jurisdiction and powers of courts of this Commonwealth.

General Laws (Ter. Ed.) c. 208, § 37, provides as follows: "After a decree for alimony or an annual allowance for the wife or children, the court may, from time to time, upon the petition of either party, revise and alter its decree relative to the amount of such alimony or annual allowance and the payment thereof, and may make any decree relative thereto which it might have made in the original suit." The statute applies to decrees entered in proceedings in the Probate Courts with respect to the support of wives and minor children and those relating to the care and custody of the minor children. (G. L. [Ter. Ed.] c. 209, §§ 32, 33.) It is settled in this Commonwealth that the courts upon which jurisdiction is conferred under the provisions of G. L. (Ter. Ed.) c. 208, have full power and authority under § 37 to modify decrees for alimony entered in divorce proceedings not only as to the future, but also as to arrears, that like power and authority exist upon petitions for executions to satisfy arrears or in proceedings for contempt to enforce the decrees, and that the same powers are enjoyed in the matter of decrees for support entered by Probate Courts under G. L. (Ter. Ed.) c. 209. *Knapp* v. *Knapp*, 134 Mass. 353. *McIlroy* v. *McIlroy*, 208 Mass. 458. *Williamson* v. *Williamson*, 246 Mass. 270. *In re Nowell*, 99 Fed. 931, 932. Under § 37 of c. 208 a decree is always subject to revision in the court that made it. *Wilson* v. *Caswell*, 272 Mass. 297, 301.

It is true that the *Knapp* and *McIlroy* cases arose in proceedings for execution to satisfy a decree entered in divorce proceedings for alimony in the first case and in separate support proceedings in the second case. Never-

theless the power of the judge in those proceedings to order that execution issue for less than the amount actually due under the original decree for alimony or support was upheld by precise reference to the statute then in force in the same form as § 37 by which the present case is governed. And in the *Williamson* case the proceeding was precisely a petition for modification of a decree of separate support and the decree entered modified the original decree both as to arrears and as to payments to be made in the future and was affirmed upon appeal by this court with the distinct recital that "Proceedings for separate maintenance, so far as they concern payments ordered to be made by a husband to his wife, in general conform to those respecting alimony in libels for divorce. G. L. c. 209, §§ 32, 33; c. 208, §§ 34, 35." (Page 272.) The subject matter is fully discussed in the *Williamson* case, in which the *Knapp* and *McIlroy* cases were said to be decisive. Those cases and the *Williamson* case are decisive to the effect that in this proceeding the judge did have power under § 37 of c. 208 to modify the decree in question as to arrears of alimony.

We have examined the cases cited by the respondent on the point just decided. *Wells* v. *Wells*, 209 Mass. 282, and *White* v. *White*, 233 Mass. 39, are specifically distinguished in the *Williamson* case as cases where questions arose touching the nature of decrees of courts of sister States. *Taylor* v. *Stowe*, 218 Mass. 248, is of that character as are many cases, cited by the respondent, which were decided in other jurisdictions. *Churchill* v. *Churchill*, 239 Mass. 443, is distinguished on other grounds. *Sistare* v. *Sistare*, 218 U. S. 1, which the respondent puts forward for the proposition that in the present case no power is conferred under the governing statute to modify the decree for alimony as to arrears, was not overlooked in the *Williamson* case. It is there cited. There is nothing in the *Sistare* case in conflict with the decisions of this court which we have already said are decisive to the effect that under the governing statutes the courts of this Commonwealth having jurisdiction of the subject matter have authority to modify decrees for alimony as to arrears as well as to the future. In the *Sistare*

case it is said that "generally speaking, where a decree is
rendered for alimony and is made payable in future install-
ments the right to such installments becomes absolute and
vested upon becoming due, and is therefore protected by
the full faith and credit clause, provided no modification
of the decree has been made prior to the maturity of the
installments . . . this general rule, however, does not ob-
tain where by the law of the State in which a judgment
for future alimony is rendered the right to demand and re-
ceive such future alimony is discretionary with the court
which rendered the decree, to such an extent that no abso-
lute or vested right attaches to receive the installments
ordered by the decree to be paid, even although no appli-
cation to annul or modify the decree in respect to alimony
has been made prior to the installments becoming due."
(Pages 16–17.)    This is the view expressed in Am. Law
Inst. Restatement: Conflict of Laws, § 435, comment (a),
where it is said: "A judgment or decree for alimony, ren-
dered in another state, will be enforced only to the amount
already accrued and due and only if the court which ren-
dered the judgment has no power to modify the amount al-
ready accrued."    See also § 464.    It is to be noted that in
the *Sistare* case the court construed the then statutes of the
State of New York as not conferring any power upon its
courts to change or set aside the rights of the wife in respect
to instalments that were overdue at the time application was
made therefor by the husband, observing, however, that the
court could not find any decision of the court of last resort
of New York dealing with that subject (page 24).

The *Sistare* case was decided in 1910.    The statutes of
New York governing the subject matter have since been
amended and reference to the statutes, as amended, may be
found in decisions of the court of last resort of New York, to
which we will refer hereinafter and in which it seems to have
been adjudicated that the present law of the State of New
York is the same as that enunciated in our *Knapp*, *William-
son* and *McIlroy* cases.    The facts in *Karlin* v. *Karlin*, 280
N. Y. 32, 34–36, are of interest since they are analogous to
the facts in the case at bar.    In that case the parties had

been divorced by a court of the State of New York and alimony of $15 a week had been awarded to the wife by a judgment dated November 3, 1924. The parties made a written agreement in January, 1925, whereby the husband agreed to pay the wife a lump sum and $6 weekly for the support of their child, and the wife accepted $1,000 "in lieu of her alimony." The judgment for alimony was not then modified and the husband continued to pay only $6 a week. In 1936, the former wife brought suit in New Jersey for the difference between the amount paid and the amount which the husband had been ordered to pay by the New York judgment. Confronted by that litigation in New Jersey, the husband moved in the Special Term of the Supreme Court of the State of New York "for an order amending the support provisions of the judgment so as to conform them nunc pro tunc to the agreement made by the parties in January, 1925." This relief was granted, and on appeal the Appellate Division modified the order by denying so much of the motion as sought relief nunc pro tunc. Upon appeal the order of the Appellate Division was reversed and that entered by order of the Special Term was affirmed, the court holding that as matter of law a judgment for alimony entered in the State of New York was always open to modification or annulment nunc pro tunc under § 1170 of the Civil Practice Act, citing *Kirkbride* v. *Van Note,* 275 N. Y. 244 (overruling *Cary* v. *Cary,* 217 N. Y. 670), and that by force of the "statutory continuation of jurisdiction, the Special Term here had power in its discretion to annul or modify the directions given by this final judgment for the support of the wife," and that the "effect of the statute is to write a reservation into every final judgment of divorce." No reference is made in the opinion of the court as to any disposition which may have been made of the suit brought by the wife in New Jersey upon the judgment for alimony. It may also be noted that in *Bentley* v. *Calabrese,* 155 Misc. (N. Y.) 843, 844, (1935), the court, relying on *Sistare* v. *Sistare,* 218 U. S. 1, refused to enforce an award of alimony made by a Probate Court of this Commonwealth, citing *Williamson* v. *Williamson,* 246 Mass. 270; *McIlroy* v. *McIlroy,* 208

Mass. 458, and *Hill* v. *Hill*, 196 Mass. 509, as authority for the proposition that in this Commonwealth decrees for alimony are "subject to modification and annulment, even as to payments accrued and overdue," and holding that where "a foreign decree is subject to modification by the court in which it was entered, neither the Federal Constitution nor the principle of comity requires the courts of another State to enforce it, as no court, other than that having jurisdiction in the original suit, could undertake to administer the relief to which the parties might be entitled" and that the "decree of the Massachusetts court sought to be enforced in this State is not a final judgment for an absolute debt."

In the present case it appears that the respondent has brought an action in the State of New York based upon the original decree for alimony entered in our Superior Court; that the petitioner filed a motion to dismiss the action; that it was denied and that upon the petitioner's appeal the denial was affirmed on November 7, 1941, without opinion but with leave to the petitioner to answer within ten days after service of order on payment of costs. *Bogert* v. *Watts*, 263 App. Div. (N. Y.) 703. There is nothing to show that any final disposition of the respondent's action has been made in the courts of New York. It is a fair inference from the respondent's position in the present case that no final judgment has been entered in the New York proceeding. Our own decisions to the effect that decrees for alimony entered in the courts of this Commonwealth may be modified both as to arrears and as to the future are unshaken in authority.

It follows from what we have said here that the ruling of the judge that he had no authority to revoke or modify the original decree for alimony as to arrears was erroneous. The order for decree entered by him, obviously based in part on this erroneous ruling, is reversed. On the facts found by the judge we are of opinion that a final decree should now be entered vacating the original decree for alimony as of the date of its entry. See *Coe* v. *Coe*, 313 Mass. 232, 235, and cases cited.

*So ordered.*