LAWRENCE E. GALVANEK *v.* DANIEL
SKIBITCKY ET AL.
(AC 18536)

O'Connell, C. J., and Lavery and Hennessy, Js.

Argued May 27—officially released October 12, 1999

---

*David C. Pite,* for the appellant (named defendant).

*Richard M. Shapiro,* for the appellee (plaintiff).

*Opinion*

O'CONNELL, C. J. The named defendant, Daniel Skibitcky,[1] appeals from the judgment of the trial court awarding to the plaintiff certain funds held in accordance with a purported escrow agreement. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. In 1984, the plaintiff, Lawrence E. Galvanek, purchased unit six of an eight unit condominium complex on Bayview Avenue in West Haven. The condominiums in the complex are waterfront units on Long Island Sound. After Hurricane Gloria damaged a seawall at the complex in 1985, the unit owners sought repair estimates with the intention of having the owners share in the expense of repairs. As a result, each owner was assessed $7500 for a proposed $60,000 repair.

---

[1] Kevin Smith, who currently holds the sum at issue, also is a defendant. Only Skibitcky has appealed. We refer in this opinion to Skibitcky as the defendant.

On August 11, 1987, the plaintiff and the defendant entered into a sales contract pursuant to which the plaintiff agreed to convey unit six to the defendant. An addendum to the contract provided that the plaintiff was to place $7500 in "escrow" with the plaintiff's attorney to be used for the assessment for the repair or improvement of the embankment.[2] The closing for this transaction took place on October 6, 1987, and title to unit six was conveyed to the defendant.

When the sales contract was executed, both parties anticipated that the condominium association would engage the contractor who had submitted a bid for $60,000 to repair the seawall in front of the building. The escrowed funds would then be used to pay the assessment for unit six. The seawall, however, was never repaired. On October 23, 1994, at the annual meeting of the condominium association, the association voted to absolve the unit owners of the $7500 assessment.[3]

The plaintiff subsequently brought the present interpleader action seeking the release of the escrowed funds. The trial court, considering the expressed intent of the parties, as well as the fact that eleven years had elapsed since the execution of the agreement, concluded that the agreement should be terminated and the funds disbursed to the plaintiff. The defendant then filed this appeal.

The defendant argues, inter alia, that the trial court improperly supplied a termination date to the escrow provision after concluding that this was an essential

---

[2] The addendum provides: "It is further agreed and understood by the parties hereto, that the seller shall place in escrow the sum of $7500 to be used for proposed future assessment to repair or improve the embankment.

"Said escrow shall be held by the seller's attorney in an interest bearing account, interest going to the seller, who will then pay the assessment when billed up to, but not exceeding $7500."

[3] The defendant was present and voted in opposition to this motion.

term of the contract. The plaintiff counters that the court properly supplied a termination date and awarded the funds to the plaintiff. We need not address these issues because we conclude that the funds were not properly held in escrow.[4]

"In Connecticut, where, pursuant to an agreement, money is left in the hands of the attorney or agent of one of the parties, the money is not delivered in escrow." *Kallas* v. *Harnen*, 48 Conn. App. 253, 258, 709 A.2d 586, cert. denied, 244 Conn. 935, 717 A.2d 232 (1998). As a matter of law, therefore, because the money was held by Kevin Smith, the plaintiff's attorney, no escrow was established and ownership of the funds remained at all times with the plaintiff. Because the interest of the plaintiff and Smith are identical, the legal status of the funds is the same as if the plaintiff had simply agreed to hold $7500 aside for the possible seawall expense. Smith never acquired independent status as an escrow agent. Smith's duty, at all times, was to the plaintiff, and he was obligated to deliver the funds to the plaintiff on demand. The trial court, therefore, properly ordered that the money be returned to the plaintiff.

We reach our result for reasons different from those set forth by the trial court, but the practical effect is to affirm the trial court's judgment.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The parties were ordered to, and did, file supplemental briefs "addressing the effect of Connecticut law, which holds that an attorney for one of the parties may not be an escrow agent. See *Kallas* v. *Harnen*, 48 Conn. App. 253, 258, 709 A.2d 586 [cert. denied, 244 Conn. 935, 717 A.2d 232] (1998)."

[5] "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." (Internal quotation marks omitted.) *Kallas* v. *Harnen*, supra, 48 Conn. App. 260 n.6.